## Watkins Medical Co. v. John J. Paul and August F. Korf.

1. CONSTRUCTION OF CONTRACTS—*Vendor and Vendee.*—Where a medical company employs an agent in a certain territory and enters into a written contract with him for the sale of its drugs, etc., for a certain period, prescribing his duties, manner of selling and reporting, compensation, etc.; the medical company is the seller of the drugs, etc., and as such is required to take out a license under the act to regulate the practice of medicine in the State of Illinois.

2. CONTRACTS—*Prohibited by Statute.*—Where the law imposes a penalty for making a contract, it impliedly forbids parties from making such contract, and when a contract is prohibited, whether expressly or by implication, it is illegal and can not be enforced.

Assumpsit; on a contract in writing. Appeal from the Circuit Court of Ogle County; the Hon. JAMES SHAW, Judge, presiding. Heard in this court at the October term, 1899. Affirmed. Opinion filed February 1, 1900.

FRANCIS BACON, attorney for the appellant.

J. C. SEYSTER, attorney for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

The J. R. Watkins Medical Company, a Minnesota corporation, had employed John J. Wehmeyer as its agent, to

sell its drugs in Champaign county, Illinois, for several years, and on January 18, 1896, entered into a written contract with him for the period from that date to March 1, 1897, prescribing his duties, manner of selling and reporting, compensation, etc. John J. Paul and August F. Korf signed a contract with the Medical Company guaranteeing performance, by the agent, of his contract and payment thereunder. After selling in Champaign county for some time under said contract Wehmeyer absconded, owing the Medical Company $460.76 for sales made, and either not collected or not remitted, and for merchandise either sold and not reported, or unsold and not returned, as required by his contract. The Medical Company brought this suit against the guarantors to recover that sum. A declaration and a plea of the general issue were filed, and the parties stipulated plaintiff could introduce any evidence competent under a proper declaration on the contract, and defendants could introduce any evidence competent under any plea, and take advantage of any defense, as if specially pleaded. A jury found for defendants and judgment was rendered in their favor, and plaintiff appeals.

Section 11 of the act entitled "An act to regulate the practice of medicine in the State of Illinois," in force July 1, 1887, requires "any itinerant vender of any drug, nostrum, ointment or appliance of any kind, intended for the treatment of disease or injury, or who shall, by writing or printing, or any other method, profess to cure or treat disease or deformity by any drug, nostrum, manipulation or other expedient," to "pay a license of $100 per month" to the State Board of Health, and gives that body power to refuse such license for sufficient cause, and subjects "any such itinerant vender who shall vend or sell any such drug, nostrum, ointment or appliance, without having a license so to do," to a fine of not less than $100, nor more than $200 for each offense. The contract between the Medical Company and Wehmeyer appointed the latter the agent of the Medical Company "for the sale and distribution of Dr. Ward's liniment, Egyptian stick salve, condition powders,

vegetable cathartic and little liver pills, petro-carbo salve, cough syrup, gen-de-can-dra and barb wire embrocation; also extracts and essences, and other goods manufactured by said The J. R. Watkins Medical Company, in the following named territory, and no other, to wit, in the State of Illinois, Champaign county." The proof showed that the remedies specifically named in the above quotation from the contract are medicines, drugs and ointments for the treatment of disease and injuries. The Medical Company did not take out a license, as required by our statute above referred to. The verdict and judgment for defendants depend upon the correctness of their contention that for lack of a license the contract with Wehmeyer was void, and can not be enforced, and therefore the guaranty can not be enforced. The Medical Company contends, first, that the remedies were not sold in a manner making the seller an itinerant vender, and therefore a license was not required; second, that Wehmeyer was the itinerant vender, if there was any, and the proof does not disclose he did not have a license; and third, that if the Medical Company was required to have a license, its failure to procure it only exposes it to the prescribed fine, and does not invalidate the contract.

We think it clear the contract provided for selling and distributing these remedies by itinerant vending. The agent was therein made to agree to provide himself with a suitable horse and vehicle and thoroughly canvass Champaign county for the introduction, distribution and sale of said remedies. Where sales could not be made, the agent was to leave on trial, samples thereof, with persons whose custom he might solicit, on terms named on the bottles, etc. He was to collect, as far as possible, from purchasers the prices of the remedies sold, and from persons with whom remedies were left on trial such sums as were prescribed on bottles, etc. He was to report to the Medical Company each week, giving a full, detailed account of the past week's work, etc., with reasonable excuse for all unemployed time during the week. The agent agreed to devote his time exclusively to that business and have no other occupation; he

was to sell the remedies at retail prices, to actual consumers only, in Champaign county, and was forbidden to deposit with or sell to any person at wholesale to enable such person to sell at retail.   The Medical Company furnished Wehmeyer with a rubber stamp and pad with which to stamp his name on advertising matter.   The stamp designated him as " Traveling salesman for Dr. Ward's remedies." The Medical Company furnished Wehmeyer order blanks, on which were directions to him, as follows :

" Always give next address.   Always call, if possible, at office given as next address.   If you can't get there write to the postmaster to forward your mail."

While the greater part of the orders Wehmeyer filled out directed the bills to be sent either to Dewey or Champaign postoffices, yet other orders named numerous other postoffices at which the agent should be addressed.   Many reports by the agent (not abstracted) were in evidence, in which he gave excuses for not working specified days in the preceding week.   They often named rain and bad roads as the excuse.   In one he said he had been traveling the greater part of the week, notwithstanding the bad roads.   In another he said he could not travel the preceding week because the roads were almost impassable.   In another he reminded the Medical Company to always send his mail to the address named in his last letter.   In another he said he would be around Dewey that week and at Ludlow the next.   From the contract, and all the documents put in evidence by plaintiff, we think it clear that the agent's duty under his employment was to go through the county from house to house peddling the remedies, when he could sell them, and leaving samples on trial when he could not make a sale, and calling again at such houses and trying to effect sales after the samples had been tested.   This was the practice against which the statute was directed.

Wehmeyer was but a traveling salesman for the Medical Company.   He did not buy the remedies from them.   The contract provided that the goods, and half the proceeds of all sales and collections, should belong to the Medical Com-

pany until the contract was fully settled and satisfied, and that if Wehmeyer disposed of the goods and proceeds contrary to the contract it should be considered an embezzlement, and he should be liable to criminal prosecution. Wehmeyer's compensation was one-half the proceeds of sales. The contract bound Wehmeyer not to enter into competition with the Medical Company in the same territory for two years after the contract expired. We are of opinion the Medical Company was the seller; that Wehmeyer was but its agent and employe, and that under the statute it was required to take out a license. It is idle to suppose there was any purpose that this employe, whose sales were comparatively trifling, should pay $100 per month for a license to make sales for the Medical Company. As the Medical Company did not take out a license, its sales, through its traveling salesman, were in violation of law.

We come now to the question whether this contract is thereby invalidated. We think the rules of law governing this subject are correctly stated in 2 Benjamin on Sales. In section 818 that author says:

" When contracts are prohibited by statute, the prohibition is sometimes express and at others implied. Wherever the law imposes a penalty for making a contract, it impliedly forbids parties from making such a contract, and when a contract is prohibited, whether expressly or by implication, it is illegal and can not be enforced. Of this there is no doubt. But the question frequently arises whether, on the true construction of a statute, the contract under consideration has really been prohibited, and in determining this point much weight has been attributed to a distinction held to exist between two classes of statutes, those passed merely for revenue purposes, and those which have in contemplation, wholly or in part, the protection of the public, or the promotion of some object of public policy."

After reviewing the cases he summarizes therefrom the following propositions in section 825 :

" First.   That where a contract is prohibited by statute, it is immaterial to inquire whether the statute was passed for revenue purposes only, or for any other object. It is enough that Parliament has prohibited it, and it is therefore void.

Secondly. That when the question is whether a contract has been prohibited by statute, it is material, in construing the statute, to ascertain whether the legislature had in view solely the security and collection of the revenue, or had in view, in whole or in part, the protection of the public from fraud in contracts, or the promotion of some object of public policy. In the former case the inference is that the statute was not intended to prohibit contracts; in the latter that it was.

Thirdly. That in seeking for the meaning of the lawgiver, it is material also to inquire whether the penalty is imposed, once for all, on the offense of failing to comply with the requirements of the statute, or whether it is a recurring penalty, repeated as often as the offending party may have dealings. In the latter case, the statute is intended to prevent the dealing, to prohibit the contract, and the contract is therefore void; but in the former case such is not the intention, and the contract will be enforced."

In the present statute there is a recurring penalty for each sale without a license, showing the object of the statute is to prevent the itinerant vending of drugs except under the license and control of the State Board of Health. We think it obvious that the purpose of the statute was not the collection of revenue, but to prevent the public from being injured in health and defrauded by itinerant sales of harmful drugs and nostrums. Therefore, under the above rules, this contract, by which the Medical Company sought to evade our statute, is impliedly prohibited, and is therefore void, and Wehmeyer is not liable to the Medical Company thereon, and as he is not liable his guarantors are not liable.

Wehmeyer sold some essences and extracts under this contract, and they were not drugs nor nostrums. If the invalidity of the contract did not affect the agent's liability for essences and extracts, then payments made should be applied upon that for which there was a legal liability, and the payments were much more than enough to extinguish that liability.

We conclude that upon the facts the verdict was right. The instructions given were inconsistent. Those given for plaintiff should have been refused. The other rulings upon instructions were substantially correct, except that one in-

struction, given for defendants, improperly left the jury to determine whether the contract was illegal. Other instructions, however, properly stated the law upon that subject, and, as we conclude the verdict is right, the judgment is affirmed.